**HORLBECK PRODUCTS CORPORA-TION, Plaintiff,**

v.

**MADISON INDUSTRIES, INC., and Scott, Inc., Defendants.**

No. C 63–61.

United States District Court
N. D. Ohio, W. D.
Nov. 6, 1964.

Fuller, Seney, Henry & Hodge, Richard S. Baker, Toledo, Ohio, for plaintiff.

Marcus L. Friedman, John W. Potter, Toledo, Ohio, for defendants.

KLOEB, District Judge.

This is an action for breach of contract to purchase merchandise and serve as exclusive sales organization and guarantee of purchases and payments. The merchandise involved was an electric food warming tray, and the defendant Scott, Inc. entered into the contract which also bore the guarantee of pur-

chases and any payment due plaintiff on said purchases by the defendant Madison Industries, Inc.

The complaint was filed on April 15, 1963, and it recites in part that, on July 1, 1962, plaintiff and defendant Scott, Inc. entered into a written agreement, a copy of which is attached to the complaint, and which is also designated Plaintiff's Exhibit 1, which agreement was terminated by defendant Scott, Inc. through a sixty day notice in writing as provided in the agreement and delivered to plaintiff on or about December 1, 1962.

In paragraph 4 of the complaint, plaintiff complains that defendant Scott, Inc. has failed and neglected to perform the aforesaid agreement in that it has not paid $6,479.27 due upon invoices for merchandise manufactured by plaintiff for the account of defendant Scott, Inc. and has not paid $16,198.40 due upon the statement of quarterly adjustment of the total purchase price prepared by a certified public accountant for the quarter ended September 30, 1962, and has not paid $25,162.64 due upon the statement of quarterly adjustment of the total purchase price prepared by a certified public accountant for the quarter ended December 31, 1962, and has not paid $6,533.88 due upon the statement of quarterly adjustment of the total purchase price prepared by a certified public accountant for the month of January, 1963. The sum total of these items is $54,374.19, for which sum plaintiff prays judgment.

In paragraph 5 of the complaint, plaintiff says that it has been further damaged by defendant Scott, Inc.'s breaches of the aforesaid agreement in the amount of $165,000.00 for destruction of plaintiff's manufacturing business through failures of defendant Scott, Inc. to make due payments and to perform the marketing and other functions undertaken by it.

In the second count, plaintiff complains that defendant Madison Industries, Inc. guaranteed to plaintiff the purchases and payments of defendant Scott, Inc.; that it has failed and neglected to pay said amounts or any part thereof to plaintiff, and has further damaged plaintiff in the amount of $165,000.00 for destruction of plaintiff's manufacturing business through failure of defendant Madison Industries, Inc. to fulfill its guaranty agreement.

Pertinent parts of the agreement read as follows:

"1. Horlbeck agrees to manufacture and appoints Scott as its sole and exclusive sales agency for the products listed * * *".

"5. The parties hereto shall agree upon a price of all products manufactured by Horlbeck and transferred to Scott. Said prices to apply at the time of presentment in a finished goods inventory of Scott, Inc., and shall hereinafter be designated as the transfer price, and shall be subject to audit at all times and to be reviewed quarterly for determination of adjustment in accordance with the following formula:

"Horlbeck's actual cost of labor and materials; Horlbeck's actual cost of overhead attributable to the manufacture of the products for the account of Scott, including the items on the attached list marked 'B'; plus administrative overhead payable to Fred H. Horlbeck, based on the rate of Twenty Thousand and no/100 ($20,000.00) Dollars per annum. The same to be prorated on Scott's purchases and taking into consideration Horlbeck's sales of other products manufactured by Horlbeck, adding fifteen (15%) percent to the total thereof as profit and burden factor."

"6. Payment for merchandise manufactured by Horlbeck for the account of Scott shall be due on shipment or storage as above provided and the receipt of detailed invoices by Scott from Horlbeck. Payment in all events shall be made in or within ten (10) days from receipt of invoices. At the end of each quarter of a contract year and within ten (10) days after receipt of a statement prepared by a certified public accountant, Scott will pay to Horlbeck whatever balance of the

guarantee may be found due upon application of said guarantee formula shows a balance due Scott, and in the event that the application of said guarantee formula shows a balance due Scott, said balance shall forthwith be credited to Scott and applied on the amounts due from Scott for the succeeding quarter. In the event that there is disagreement or dispute on any quarterly adjustment, the adjustment figure shall be determined by a certified public accountant selected jointly by the parties or their legal representatives."

"13. *Recission and Amendment.* * * * In the event that either Scott or Horlbeck is dissatisfied for any reason with the operation of this Agreement, it may rescind the same upon sixty days' notice in writing, but this Agreement shall remain in effect during the period of such notice, or for such shorter or longer period as may be agreed on by the parties. * * * ".

The agreement is dated July 1, 1962, and is signed by plaintiff by its President Frederick H. Horlbeck, Jr., and by the defendant Scott, Inc. by W. S. Harrison, President.

At the conclusion thereof there appears the following:

"In consideration of the execution of the above Agreement, in which Madison Industries, Inc. has an interest, Madison Industries, Inc. will guarantee Scott purchases from Horlbeck, and any payment due Horlbeck on said purchases by Scott.

MADISON INDUSTRIES, INC.
By (s) Milton J. Grosse President".

Under date of June 17, 1963, defendant Scott, Inc. filed its answer, in which it sets forth a counterclaim based upon plaintiff's alleged failure to manufacture and ship the products as ordered by the defendant and failure of plaintiff to deliver certain finished goods which defendant charges plaintiff has refused to deliver although repeated demands have been made for such delivery. The sum total of the counterclaim is $32,533.70.

Under date of June 20, defendant Madison Industries, Inc. filed an answer, wherein it takes the position that its guarantee attached to the contract did not go into the body of the agreement or any of the provisions therein other than the purchases, and also alleges that plaintiff made certain representations to induce defendant to sign the guarantee upon which defendant relied, to its detriment; that said representations were false and that, therefore, the contract is unenforceable.

At the trial of the case beginning on June 1, 1964, plaintiff's President Fred H. Horlbeck, Jr. and his certified public accountant Earl Richard Holden offered their testimony for plaintiff. For the defense, W. S. Harrison, President of Scott, Inc., and Milton J. Grosse, President of Madison Industries, Inc., testified in behalf of their companies.

Briefs were thereafter filed, plaintiff's reply brief having been filed on September 15, 1964. Defendant Madison Industries, Inc. did not file a post trial answer brief, it apparently relying upon the brief of the defendant Scott, Inc.

From a study of the brief filed by defendant Scott, Inc., we conclude that its position is as follows:

"1. The suit should be dismissed for the reason that plaintiff has not fulfilled the conditions precedent on its part to be performed, mainly, the adjustments to be made in the event of a dispute by a Certified Public Accountant selected jointly by the parties has not been made and this suit is premature.

"2. The allegation in paragraph 5 as to destruction of business or loss of profits does not state a cause of action, first, because of contract provisions providing for the termination of the contract by the parties and by Horlbeck individually, and secondly, the law provides no remedy in a matter as speculative and remote as the damages requested.

"3. There can be no recovery for merchandise under the agreement inasmuch as said merchandise has not been shipped or stored pursuant to the terms of the contract and, therefore, no debt

has been incurred by the defendant, Scott, Inc.

"4. Said contract was vitiated by the fraud and misrepresentation by Horlbeck * * *.

"5. Judgment should be given to Scott, Inc. for the damages it has sustained by the wrongful refusal of Horlbeck to timely deliver its products and also for wrongfully withholding products now in its warehouse ordered by Scott, Inc. as alleged in paragraph 2 of the counter-claim."

■ From a study of the record of the case, we find no merit in position one of the defendant with respect to adjustments to be made in the event of a dispute by a certified public accountant selected jointly by the parties.

No dispute or objection was ever entered by defendant with respect to the transfer prices on merchandise actually delivered by plaintiff. We find no dispute in the record with reference to the quarterly adjustment accounts that were sent by plaintiff to defendant Scott for the quarters ending September 30, 1962, December 31, 1962, and January 31, 1963. Under date of November 28, 1962, and immediately upon receipt of the first quarterly adjustment statement for the period ending September 30, W. S. Harrison, President of defendant Scott, directed a letter to plaintiff (Plaintiff's Exhibit 2), in which he gave notice of cancellation of the agreement. His reasons therefor are set forth in the letter. Nowhere does he dispute any of the computations in the quarterly adjustment statement, nor does he ask that the statement be submitted to a certified public accountant for determination. At no time thereafter do we find anything in the record that indicates a dispute or a request for a determination by an accountant. The contract was in effect for five months when defendant Scott sent its letter of November 28 to plaintiff. As provided in the agreement, the notice of cancellation took effect sixty days thereafter. There was no agreement between the parties to shorten the cancellation date. During the month of Decem-

ber, 1962, defendant continued to order merchandise of plaintiff, and nowhere do we find any record of a dispute or any request for submission and determination of an accountant. The case came for trial in due course and was pretried prior to the trial date of June 1, 1964. At no time has defendant ever made a request for a determination by a mutually agreed upon certified public accountant.

■ We find no merit in the third defense. It appears that the small volume of merchandise ordered during the life of the contract was within reason timely delivered by plaintiff to defendant.

■ We find no merit in the fourth position of defendant as to fraud and misrepresentation. Defendants' officers Mr. Harrison and Mr. Grosse were highly experienced in their line of business. They held a number of meetings with plaintiff's President in March, April and May of 1962, just prior to the signing of the agreement on July 1. They paid visits to plaintiff's manufacturing facilities in Massachusetts and apparently, from the record, thoroughly acquainted themselves with all of plaintiff's operations. If they entered into an improvident contract they apparently did so with their eyes open.

■ We find no merit in the fifth position of the defendant with regard to timely delivery of products and particularly the withholding of products now in plaintiff's warehouses which were ordered by defendant Scott. Payment for plaintiff's product was discontinued by Mr. Grosse as Treasurer of defendant Scott about the middle of October, 1962, and with knowledge of this discontinuance plaintiff should rightfully be excused for refusing to deliver further manufactured products without payment therefor.

We, therefore, find no merit in the counterclaim pleaded in the answer of defendant Scott, Inc.

Judgment may, therefore, be entered for plaintiff against both defendants for the sum of $54,374.19 as the total unpaid

purchase price of products manufactured by plaintiff for defendant Scott, Inc.

We find merit in the second defense of defendant going to paragraph 5 of plaintiff's complaint.

It is defendant's position that the allegation in paragraph 5 as to the destruction of business or loss of profits by plaintiff does not state a cause of action, first, because of contract provisions providing for termination of the contract by the parties and by Horlbeck individually, and, secondly, that the law provides no remedy in a matter so speculative and remote as the damages requested.

Plaintiff's claim in paragraph 5 is founded substantially upon the unsupported opinion of Fred Horlbeck, Jr., as found on page 52 of the transcript as follows:

"Q  Have you an opinion as to the financial loss which the Horlbeck Products Corporation sustained by reason of its failure to receive payments in accordance with Plaintiff's Exhibit 1?

" * * *

"A  Yes.  $165,000."

At the conclusion of plaintiff's case, we find in the record, page 218, the following:

"MR. POTTER:  I would like to make a motion at this time, your Honor.

"In reference to the Complaint, I move at this time to dismiss that portion of the plaintiff's Complaint in Paragraph 5, the paragraph in reference to damages against Defendant Scott, Inc., that is, the claim in the sum of $165,000.00 for destruction of plaintiff's manufacturing business; first, that there is no basis in law, and secondly, on the basis that there was no adequate proof introduced to move this court to award a verdict in the sum of $165,000.00 for the destruction of a so-called manufacturing business during a period of perhaps not more than six months, the life of this contract.

"The only evidence was the opinion of the president himself that this was the value of his business, although he had never made a salary, he had never had any profit from this enterprise since the time of its inception; that its total capital, including money borrowed, was somewhere in the neighborhood of $50,000.00.

" * * *

"THE COURT:  I will defer action on your motion at this time and you may proceed."

The motion of defendant is now sustained for the following reasons:

1.  The contract is a carefully drawn agreement entered into by both parties after considerable thought and discussion.  It provides a method of termination either upon sixty days' notice or sooner by agreement of the parties.  Nowhere in the contract does it contemplate consequential damages for breach or termination.

2.  The evidence of alleged consequential damages is so meager as to render the question highly speculative. Plaintiff was incorporated in 1959.  It was wholly owned by Frederick H. Horlbeck, Jr., its President.  Its initial operations consisted of the manufacture of parts for eyeglass frames.  For some months prior to the agreement of July 1, 1962, it had engaged in the manufacture of the electric food warmers.  The manufacture of neither of these products proved to be financially successful.  The operation was carried on in a non-manufacturing type building apparently as a job enterprise with generally two or three employees in addition to Mr. Horlbeck.  At the time the parties contacted each other in the Spring of 1962, and up to the time the contract was entered into, plaintiff had operated from its beginning at a loss.  In the Spring of 1962, it had on its hands some 15,000 of the electric food warming trays which it desired to sell outright to defendant Madison Industries, Inc.  It apparently had no effective sales organization.  The contract was in effect only five months when notice of termination was given by

defendant Scott. Plaintiff now claims a destruction of its business and consequent damages thereof in the sum of $165,000.00. We believe this claim to be highly speculative and remote and contrary to the spirit of the contract.

3. Nowhere in the record does it appear that the decision to terminate the agreement was arrived at through any consideration other than expediency and good judgment. There appears to have been no ill feeling whatever toward plaintiff corporation or its President. The agreement was terminated substantially because of failure to market as the result of competition.

The motion to dismiss paragraph 5 of the complaint is, therefore, sustained.

Findings of fact and conclusions of law drawn in accordance with this opinion may be prepared and lodged with the Court by plaintiff within fifteen (15) days. Within ten (10) days thereafter defendants may prepare and lodge with the Court their exceptions or suggested additions thereto.